UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
VARDELL HUGHES,                                    **COMPLAINT**

                                                   **18 cv 9380**

                                                   **ECF Case**

                        Plaintiff,

            vs.

The CITY OF NEW YORK,
NEW YORK CITY POLICE OFFICER
STEPHEN MALVAGNA,
LIEUTENANT JOHN DOE,
and OFFFICERS JOHN DOES 1-5                         **JURY TRIAL DEMANDED**
in their individual and official capacities,

                        Defendants.
-------------------------------------------------------------x

Plaintiff Vardell Hughes, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:


## PRELIMINARY STATEMENT

1.   This action arises from the false arrest and malicious prosecution of

Vardell Hughes ("Plaintiff") by New York City police officers.  Plaintiff asserts

constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the

individual defendants for false arrest, malicious prosecution, failure to intervene, and a

*Monell* claim against the City of New York for the same constitutional violations.

Additionally, Plaintiff asserts analogous claims under New York Law against the

individual defendants, and against the City of New York under the doctrine of *respondeat*

*superior*.  Plaintiff seeks compensatory and punitive damages, costs, disbursements, and

attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.  This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.  Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.  Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.   The individually named defendants Police Officer Stephen Malvagna (Shield #12137) ("PO Malvagna"), Lieutenant John Doe ("Lt. Doe"), and Police Officers John Does 1-5 ("PO Doe 1," "PO Doe 2," etc.) (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7.     On the date of the incident giving rise to this complaint, the individual defendants were assigned to the NYPD 10th Precinct.

8.     Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9.     Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

10.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the dismissal of his criminal charges, being assigned Claim # 2018PI001058.  At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

11.     The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on May 8, 2018.

12.     This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

**PLAINTIFF MEETS UP WITH HIS BROTHER**

13.     Around 10:30 p.m. on July 14, 2017, Plaintiff met up with his brother, Larnell Hughes ("Larnell"), in the Chelsea neighborhood of Manhattan, around 300 8th Avenue.

14.     The purpose of their meeting was for Larnell to pay back some money that Plaintiff had previously loaned him.

15.     Plaintiff was wearing formal trousers and a navy blue sweater as he was planning, after meeting up with his brother, to go to work as a security guard in Lincoln Center.

16.     But Plaintiff's work plans that evening would not come to pass.

**A VIOLENT GANG ASSAULT**

17.     After Larnell handed Plaintiff the cash, two young ruffians – male, approximately 18-years-old – approached the brothers and demanded:  "Give me that money!"

18.     The two young men were prowling the streets in a large group, demanding money, robbing, and terrorizing innocent people.

19.     When Plaintiff and Larnell refused to give them money, one of the young men swung his fist at Larnell, and the other swung at Plaintiff and pulled out a knife.

20.     Suddenly, a group of about ten men – violent associates of the two young men – surrounded Plaintiff and Larnell.

21.     Armed with knives and mace, the gang rushed and attacked Larnell and Plaintiff in an effort to rob them.

22.     At the same time, some of the gang members attacked another individual named Self-Justice Gibson ("Gibson") who was also present, and the gang succeeded in violently snatching Mr. Gibson's cell phone and jewelry.

23.     The gang-members with knives swung their blades with abandon and with no regard for human life.

24.     Thankfully, Plaintiff – a robust veteran of the United States Navy – was able to defend his life by preventing the gang from overpowering him.

25.     In the course of defending himself from mortal blows to his head and body, Plaintiff acted in a purely defensive manner – dodging, trying to get people off him, trying not to get stabbed.

26.     At no point did Plaintiff act in an aggressive manner designed to harm; outnumbered and facing a deadly attack, he was simply protecting his life.

27.     To escalate their attack, some of the gang members grabbed bottles and other objects from trash cans and threw them at Plaintiff.

28.     In the process of being attacked, Plaintiff received numerous hits to his body and he injured his shoulder, requiring medical evaluation, medication, treatment, and physical therapy.

**POLICE OFFICERS RESPOND AND THE GANG RUNS AWAY**

29.     As Plaintiff was being gang-assaulted, a group of NYPD officers arrived on the scene, including PO Malvagna, Lt. Doe, and Police Officers John Does 1-5.

30.     Upon the arrival of police, the gang ran away to escape apprehension and accountability for their violent attack.

31.     The individual defendants could clearly see the gang-members fleeing.

32.     Only one member of this gang – Gamaliel Arroyo ("Arroyo") – was still on the scene when the officers arrived because he was grappling with Larnell.

33.     The officers separated Larnell and Arroyo.

34.     Meanwhile, Plaintiff calmly approached the officers as he was relieved to see law enforcement and was eager to explain what had happened.

35.     The individual defendants could see that Plaintiff, Larnell, and Gibson were visibly injured and in pain.

36.     Plaintiff explained to PO Malvagna how he was on his way to work as a security officer in Lincoln Center and briefly met up with his brother Larnell when the group of young men tried to rob them.

37.     Plaintiff explained what happened clearly and lucidly.  He was cooperative and measured in every way, answering questions honestly, speaking politely and intelligently, and to further establish his credibility, he informed PO Malvagna and other officers that he was a Navy veteran.

38.     Larnell also explained to the individual defendants the truth of what happened:  he had just come from work to meet his brother when the gang – of which Arroyo was a member – demanded money and violently assaulted him, using knives and mace.

39.     Corroborating Larnell's explanation were two bleeding knife slashes on his bicep, which the individual defendants saw.

40.     It was also obvious to the individual defendants that Larnell was reeling from the stinging mace in his face and eyes.  An ambulance would eventually be called for Larnell, and EMS personnel helped wash out his burning eyes.

41.     Gibson further explained to the responding officers that the gang attacked him and took his cell phone and the medallion from his necklace, reaffirming that the gang was out to rob people.

42.     The officers also observed and spoke with the gang-member Arroyo.

43.     Arroyo, who was wearing jeans and a t-shirt, was unscathed, and the individual defendants could clearly see this.

44.     Arroyo, in a desperate salvo to escape responsibility for his gang's criminal behavior, said that he was assaulted and injured by Larnell, Plaintiff, and Gibson.

45.     But the police saw no injuries on Arroyo, who refused medical attention.

46.     It was obvious that Arroyo was lying to absolve himself of blame and escape responsibility.

47.     Arroyo's story was clearly absurd, and he could not explain to any of the officers who the young men who ran away were; what led to the alleged assault; how Larnell came to be maced and slashed; how Gibson was robbed; and how the three alleged attackers could get so visibly injured while Arroyo was unscathed.

48.     The officers spoke with Plaintiff, Larnell, and Gibson separately.

49.     The individual defendants saw that Plaintiff, Larnell, and Gibson had no opportunity to speak with each other when the officers arrived.

50.     The individual defendants knew that Plaintiff, Larnell, and Gibson gave explanations about being robbery victims that were entirely consistent with each other.

51.     The officers searched Plaintiff, Larnell, and Gibson at the scene and found nothing unlawful, neither weapons nor contraband.

52.     The individual defendants had every reason to know Arroyo was lying.

53.     Indeed, the officers did not believe gang-member Arroyo's absurd story.

54.     Plaintiff acted with complete dignity and courtesy throughout his interactions with the officers, and at no point did he do anything unlawful in their presence to justify an arrest.

**ORDERING PLAINTIFF'S ARREST AND PROSECUTION**

55.     Despite being aware of all the reasons to know that Plaintiff was telling the truth while Arroyo fabricated his version of events – that Plaintiff was the victim of a violent gang assault while Arroyo was part of that violent gang – Lt. Doe ordered PO Malvagna to arrest Plaintiff.

56.     PO Malvagna handcuffed Plaintiff behind his back and put him in the back of a police vehicle.

57.     When Vardell was transported to the 10th Precinct, PO Malvagna told Plaintiff that he didn't think Plaintiff should have been arrested and said that he was simply following his boss's orders, referring to Lt. Doe.

58.     After about five hours in police custody, Plaintiff was issued a Desk Appearance Ticket to appear in New York County Criminal Court on a future date.

59.     Because of his arrest and detention, Plaintiff missed his shift at Lincoln Center and lost wages.

60.     When Plaintiff appeared in Criminal Court for his arraignment, he was charged with assault in the third degree, a class A Misdemeanor, on Docket Number 2017NY039647.

61.     Plaintiff was released on his own recognizance but was ordered to appear again in criminal court on a future date.

62.     After three mandatory appearances in Criminal Court, the prosecution against Plaintiff was dismissed on December 15, 2017 pursuant to New York speedy trial provisions.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

63.     All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and scope of their duties.

64.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

65.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

**FAILURE TO TRAIN AND SUPERVISE**

66.     Upon information and belief, the individual defendants' aforementioned abuse of power was not an isolated event.  There were other instances of misconduct by the individual defendants that Defendant City knew or should have known about.

67.     The NYPD failed to supervise and discipline the individual defendants despite their histories of misconduct, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

**DAMAGES**

68.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;

b.   Lost wages;

c.   Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

## FIRST CLAIM

### False Arrest Under Section 1983

69.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

70.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free from false arrest.

71.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

72.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Malicious Prosecution Under Section 1983

73.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

74.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

75.     Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, and the prosecution was ultimately dismissed.

76.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Failure to Intervene Under Section 1983

77.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

78.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

79.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

80.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Municipal Liability Under Section 1983

81.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

82.     By the actions described, the Defendant City deprived Plaintiff of his Constitutional rights through its failure to train, supervise, and discipline abusive and malicious NYPD officers.

83.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

### FIRST CLAIM

**Malicious Prosecution Under N.Y. State Law**

84.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

85.     As detailed above, the individual defendants intentionally and with actual malice initiated prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

86.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SECOND CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

87.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

88.     Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

89.     Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, confined him, and initiated false charges against him.

90.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law
(Against Defendant City of New York)**

91.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

92.     Defendant City owed a duty of care to Plaintiff to prevent his false arrest and malicious prosecution, and the mental and emotional abuse sustained by Plaintiff.

93.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

94.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

95.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

96.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

**Respondeat Superior Under N.Y. State Law**

97.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

98.     Defendant City is the employer of the individual defendants.

99.     Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false arrest and malicious prosecution committed by the individual defendants against Plaintiff.

100.    As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.     An order awarding compensatory damages for Plaintiff Vardell Hughes in an amount to be determined at trial;

b.     An order awarding punitive damages in an amount to be determined at trial;

c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.     Such other and further relief as this Court may deem appropriate.

DATED:     October 13, 2018                    _____/s/_____
           New York, New York                 CYRUS JOUBIN, ESQ.
                                               43 West 43rd Street, Suite 119
                                               New York, NY 10036
                                               (703) 851-2467
                                               joubinlaw@gmail.com
                                               Attorney for Vardell Hughes