UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

VARDELL HUGHES,

                                                                                          **18 cv 9380 (MKV)**

                                                    Plaintiff,
            -against-

THE CITY OF NEW YORK, et al.,

                                                  Defendants.

------------------------------------------------------------------------ x

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS

CYRUS JOUBIN, ESQ.
43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com
*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . 1

ARGUMENT . . . . . . . . . . 4

    I.    PLAINTIFF IS ENTITLED TO TWO FORMS OF SANCTIONS TO CURE THE PREJUDICE CAUSED BY DEFENDANTS' SPOLIATION OF ESI . . . . 4

        A.    Legal Standard Under Rule 37(e) . . . . 4

        B.    Application of Rule 37(e)(1) to ESI Here . . . 5

            1.    Duty to Preserve . . . . . 5

            2.    Failure to Take Reasonable Steps to Preserve . 8

            3.    ESI Cannot be Restored or Replaced Through Additional Discovery . . . . . 8

            4.    Prejudice . . . . . . 9

            5.    Appropriate Sanctions for Spoliation . . 10

CONCLUSION . . . . . . . . . 13

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Arista Records LLC v. Usenet.com*,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009) * * * *   5

*Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*,
    304 F.R.D. 178 (S.D.N.Y. 2014) * * * * *   11

*Lokai Holdings LLC v. Twin Tiger USA*,
    15-CV-9363 (ALC) (DF),
    2018 U.S. Dist. LEXIS 46578 (S.D.N.Y. March 12, 2018) * *   6, 7, 12

*Panetta v. Crowley*,
    460 F.3d 288 (2d Cir. 2006) * * * * * *   9

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
    328 F.R.D. 100 (S.D.N.Y. 2018) * * * * *   11

*Ungar v. City of New York*,
    329 F.R.D. 8 (E.D.N.Y. 2018) * * * * *   11

*West v. Goodyear Tire & Rubber Co.*,
    167 F.3d 776 (2d Cir. 1999) * * * * * *   4, 11

*Zhang v. City of New York*,
    No. 17-CV-5415 (JFK) OTW),
    2020 U.S. Dist. LEXIS 148031 (S.D.N.Y. Aug. 17, 2020) * *   6

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) * * * * *   5

**Federal Statutes**

Fed. R. Civ. P. 37   * * * * * * * *   *passim*

**Preliminary Statement**

This motion for spoliation sanctions concerns Defendants' destruction of important evidence in this case – namely, police radio transmissions and photographs. The destruction of this electronically stored information ("ESI") occurred after Plaintiff filed a timely Notice of Claim on the defendant City of New York ("City"). Although this Notice of Claim created a duty to preserve the radio transmissions and photographs, Defendants did nothing to preserve these crucial pieces of evidence prior to their destruction. Because the evidence destruction has undermined Plaintiff's ability to prove his false arrest and malicious prosecution claims, at least two forms of spoliation sanctions are warranted under Rule 37(e)(1) of the Federal Rules of Civil Procedure. First, the Court should preclude Defendants from offering testimony at trial as to the content of the destroyed photographs; the Court should also preclude or disregard such testimony in the context of Defendants' pending motion for summary judgment. Second, the Court should award costs and attorney's fees for the time and expense Plaintiff has spent pursuing and litigating the destroyed ESI.

**Statement of Facts**

**The July 14, 2017 Incident**

Plaintiff alleges that on the evening of July 14, 2017, he was attacked by a group of about ten young men armed with knives and mace who tried to rob him and his brother. *See* Complaint ¶¶ 13-28, ECF No. 1. Defendant officers Malvagna and Campanella were alerted to the scene of the attack through a series of radio

1

transmissions. Malvagna Dep. 15:7-16:17.[1] When the officers arrived, they arrested Plaintiff, not any of his attackers, because one of the attackers (named Gamaliel Arroyo) falsely claimed that Plaintiff, acting with two others, attacked *him*. *See* Complaint ¶¶ 29-54. Officer Malvagna used his NYPD-issued smartphone to take photographs of Arroyo, Plaintiff, and two other arrestees – Plaintiff's brother Larnell Hughes ("Larnell"), and a stranger named Self-justice Gibson ("Gibson"). Malvagna Dep. 52:3-15, 59:3-13

**Plaintiff's Notice of Claim**

On January 8, 2018, Plaintiff filed a Notice of Claim with the City. Notice of Claim, Joubin Decl., Ex. A (ECF No. 92-1). The Notice of Claim summarized the legal claims in this lawsuit; identified defendant Officer Malvagna; stated the date, time, and place of Plaintiff's arrest; and provided the docket number related to his prosecution in criminal court.

**The Destruction of Photographs, 911 Calls, and Radio Transmissions**

Ten days later, on January 18, 2018, Officer Malvagna exchanged his NYPD-issued smartphone for a new phone, and all of the data – including the photographs he had taken of Plaintiff, Arroyo, Larnell, and Gibson – were erased. *See* Malvagna Dep. 34:7-35:9; Malvagna Memobook, Joubin Decl., Ex. C (ECF No. 92-3). The photographs were not preserved and cannot be recovered. *See* Certification of Daniel Gorayeb, Joubin

---

[1] References to "__ Dep." are to the deposition transcripts annexed as exhibits to the undersigned's Declaration (ECF No. 92) ("Joubin Decl."). Exhibit B (ECF No. 92-2) consists of relevant portions of Stephen Malvagna's deposition transcript ("Malvagna Dep."); Exhibit F (ECF No. 92-6) consists of relevant portions of Gamaliel Arroyo's deposition transcript ("Arroyo Dep."); and Exhibit I (ECF No. 92-9) consists of relevant portions of Fayola Robinson's deposition transcript ("Robinson Dep.").

2

Decl., Ex. D (ECF No. 92-4); *see also* Joubin Decl. ¶ 12. Arroyo also does not have the photographs that he claims he took of himself. *See* Arroyo Dep. 29:4-11.

On July 14, 2018, the NYPD's Tape and Records Unit deleted the 911 calls and radio transmissions that alerted the police to the scene of the attempted robbery. *See* Affidavit of Lt. Peter Brower ¶¶ 4-5, Joubin Decl., Ex. E (ECF No. 92-5).

**NYPD's Smartphone Pilot Program**

On May 15, 2015, the NYPD issued Operations Order No. 20: Pilot Program – Use of Department Smartphone and Tablets. *See* Joubin Decl., Ex. G (ECF No. 92-7). Under Operations Order No. 20, police officers using smartphones to take photographs must retain those photographs on the smartphones or transmit them to one of various "preservation [email] mailboxes." Operations Order No. 20 at 7. "Deletion of…photo…by a member of service without complying with the transmission protocol below may lead to Department discipline or significant sanctions in criminal or civil cases." *Id*. This Operations Order was in effect from May 15, 2015 to April 8, 2019. *See* Interim Order No. 24 (issued April 18, 2019), Joubin Decl., Ex. H (ECF No. 92-8) at 4 ("Operations Order 20, series 2015, is hereby **REVOKED**) (emphasis in original).

**Plaintiff's Efforts to Obtain the Destroyed ESI or an Adequate Substitute**

Plaintiff's undersigned counsel has expended considerable time and resources to obtain the destroyed ESI, ascertain the circumstances of their destruction, and try to find adequate substitutes for them. With respect to the photographs on Malvagna's phone, the undersigned conferred over the course of a year with the City's defense attorneys – as well as counsel for the NYPD – to verify the destruction of the photographs and the impossibility of recovering them. *See* Joubin Decl. ¶¶ 5, 6, 12-15. The undersigned also

3

pursued follow-up discovery to learn the NYPD procedures intended to prevent such destruction.  *See id.* at ¶¶ 9-10, 13-14.

With respect to the destroyed radio run transmissions, Plaintiff sought to obtain the best substitute by conducting the deposition of NYPD Communications Division witness Fayola Robinson, a former 911 dispatcher, who knew how to interpret the Sprint Report / Event Chronology, and could explain how the written text would be orally transmitted to police officers.  *See* Joubin Decl. ¶ 11.  As Robinson testified, the radio transmissions conveyed the "pertinent information" from the Sprint Report.  Robinson Dep. 52:24-53:8.  As defense counsel's own questioning made clear, the Sprint Report is by no means a perfect substitute for what the defendant officers would have heard as they were driving to the scene; it is at best a rough approximation.  *Id*. at 53:14-25.

## Argument

**I.  PLAINTIFF IS ENTITLED TO TWO FORMS OF SANCTIONS TO CURE THE PREJUDICE CAUSED BY DEFENDANTS' SPOLIATION OF ESI**

### A.  Legal Standard Under Rule 37(e)

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir. 1999).  Amended in 2015, Rule 37(e) governs sanctions for failure to preserve ESI.  Rule 37(e) provides two categories of sanctions, with severe sanctions – such as dismissal or default judgment – reserved for parties who "acted with the intent to deprive" other litigants of information.  Fed. R. Civ. P. 37(e)(2).  Here Plaintiff moves for the less severe form of sanctions under Rule 37(e)(1):  "If electronically stored information that should have

4

been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court…upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Below, each element in Rule 37(e)(1) is analyzed and applied to the destroyed photographs and radio transmissions.

      B.  Application of Rule 37(e)(1) to ESI Here

        1.       **Duty to Preserve**

Under Rule 37(e)(1), a party "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Arista Records LLC v. Usenet.com*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009) (internal citation and quotation omitted). "Identifying the boundaries of the duty to preserve [evidence] involves two related inquiries: when does the duty to preserve attach, and what evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (emphasis omitted). The *when* and *what* of a party's duty to preserve are fact-sensitive inquiries; one finds commonalities, but not categorical rules, in the case law.

Here, both the *when* and *what* of Defendants' duty to preserve must account for the City of New York's legal sophistication and robustness (the New York City Law Department website boasts "approximately 1,000 lawyers"), and the fact that Plaintiff served upon the Law Department a Notice of Claim (Exhibit A) that alerted the City to impending litigation. Indeed, as argued in Defendants' own summary judgment motion –

5

in which Defendants assert that Plaintiff's Notice of Claim "only" preserved his malicious prosecution state claim (*see* Defs. Mem. at 24, ECF No. 85) – a Notice of Claim preserves a plaintiff's ability to prosecute state law torts.  The Notice of Claim not only enables litigation; its purpose – implied in its very name – is to put the City of New York on *notice* of litigation.  That is why, upon receiving notices of claim, the City routinely conducts "50-h hearings" (named after Section 50-h of the New York General Municipal Law), in which it examines the claimant under oath about the claim – just as it did with Plaintiff's claim.  *See* Joubin Decl. ¶ 16.

Plaintiff's notarized Notice of Claim identified Defendant Malvagna, stated the name of Plaintiff's attorney, and listed the legal claims he has asserted against Malvagna and the City of New York; it summarized the very incident at the center of this lawsuit; it indicated the time, date, and place of the incident; and it provided the unique Docket Number assigned to his criminal prosecution.  Plaintiff's Notice of Claim was more than sufficient to alert the City that litigation was likely.  *See Zhang v. City of New York*, No. 17-CV-5415 (JFK) OTW), 2020 U.S. Dist. LEXIS 148031, at *10 (S.D.N.Y. Aug. 17, 2020) (stating that plaintiff's "April Notice of Claim" created a duty to preserve evidence in connection with his death in jail, but declining to find that the "April Notice of Claim and the specific language contained therein required preservation of any other ESI beyond the preserved and produced surveillance video of Mr. Zhang's cardiac arrest on the day of his death").

It doesn't matter that Plaintiff's Notice of Claim did not explicitly state the items that he wanted preserved.  This point is made clear in *Lokai Holdings LLC v. Twin Tiger USA*, 15-CV-9363 (ALC) (DF), 2018 U.S. Dist. LEXIS 46578 (S.D.N.Y. March 12,

6

2018).  In *Lokai*, the district court found that the duty to preserve ESI arose with a cease-and-desist letter; the court rejected as "unavailing" defendant's argument that the cease-and-desist letter's failure to ask for preservation of ESI defeated its duty to preserve.  *Id*. at *32-33.  The *Lokai* court faulted defendants for not consulting an attorney on receipt of the cease-and-desist Letter; had they done so, "they would have been apprised of their preservation obligation, which runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction."  *Id.* at 33 (internal quotation and citation omitted).  If any of the Law Department's "approximately 1,000 lawyers" – preferably one with some understanding of false arrest and malicious prosecution claims – saw Plaintiff's Notice of Claim, an obvious question should have been asked:  what information is potentially relevant to this litigation?  It is hard to imagine that items as basic as radio transmissions and police photographs would not have crossed the mind of a competent attorney.  It is also hard to imagine why the City's Law Department cannot promptly contact its agencies and employees to issue a litigation hold.

Even if Malvagna was not personally notified of a litigation hold, he was strictly forbidden from destroying any of the photographs on his NYPD-issued smartphone. NYPD rules – namely, Operations Order No. 20, issued in 2015 – "strictly prohibit[s]" officers from allowing the deletion of photographs on their NYPD smartphones; officers must "comply with preservation obligations" or face "discipline or significant sanctions in criminal or civil cases."  *See* Joubin Decl., Ex. G.

To the extent that Operations Order No. 20 does not specifically apply to the phone transfer process, then we have a gap in the evidence.  Plaintiff requested, but never

7

received, NYPD rules and policies about preserving data during the phone transfer process. *See* November 4, 2019 NYPD Subpoena, Joubin Decl., Ex.K, at Appendix A ¶¶ 1-3; *see also* Joubin Decl. ¶¶ 14-15 (explaining how the Law Department took responsibility for responding to the NYPD subpoena). To the extent such rules and policies exist, then the City's failure to produce them during the course of discovery should lead to the negative inference that Malvagna violated the rules and policies. To the extent such rules and policies do not exist, then the City's duty to impose a litigation hold becomes even more vital.

### 2.     Failure to Take Reasonable Steps to Preserve

Defendants did nothing to preserve the radio transmissions and photographs. The NYPD's Tape and Records Unit automatically deleted the radio transmissions one year after Plaintiff's arrest because it had not received any instruction to preserve them. *See* Brower Affidavit, Joubin Decl., Ex. E. Officer Malvagna allowed the photographs on his NYPD smartphone to be deleted without saving them or otherwise complying with his "preservation obligations" to transmit them to a "preservation email address." Operations Order No. 20, Joubin Decl., Ex. G, at 7 (DEF 142).

### 3.     ESI Cannot be Restored or Replaced Through Additional Discovery

There is no dispute that all 911 calls and radio transmissions in connection with Plaintiff's arrest have been permanently destroyed. *See* Brower Affidavit, Joubin Decl., Ex. E ¶¶ 4,5. There is also no dispute that the relevant photographs that Malvagna had on his phone cannot be recovered or replaced. *See* Bargueiras Email, Joubin Decl., Ex. J (ECF No. 92-10) ("the phone was wiped/erased of all data and the device was returned to

8

the phone carrier"); *see also* Certification of Daniel Gorayeb, Joubin Decl., Ex. D (ECF No. 92-4).

### 4. Prejudice

The prejudice from Defendants' evidence destruction relates to the importance of the radio transmissions and photographs to the probable cause analysis at the center of Plaintiff's false arrest and malicious prosecution claims. "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Rule 37(e) Advisory Committee Note. In determining probable cause, the defendant officers were required to evaluate the totality of circumstances. *See Panetta v. Crowley*, 460 F.3d 288, 395 (2d Cir. 2006). Particularly significant circumstances here were the appearances of Plaintiff, Larnell, and Arroyo, as well as the congruence – or lack thereof – between their appearances, their explanations to the police, and the content of the radio transmissions (some of which indicated ten to fifteen people involved in violent behavior). The Defendants' destruction of the radio transmissions and photographs – which cannot be restored or replaced – has deprived Plaintiff of his ability to fully demonstrate Arroyo's absence of injuries and the clear implausibility of Arroyo's story.

True, not all of the photographs on Malvagna's phone were of equal value. The fact that there is a photograph of Larnell's knife cuts and Plaintiff's mug shot reduces the prejudice from the destruction of Malvagna's photographs. But because there is no substitute for the destroyed Arroyo photographs, the prejudice is significant. Given that Arroyo's story was that he was punched and kicked in the face and stomach for 30-45 minutes by Plaintiff and Larnell, the photographs would demonstrate more powerfully

9

than any other evidence the plausibility – or impossibility – of his story.  From Plaintiff's perspective, the destruction of Malvagna's photographs has deprived him of the opportunity to decisively demonstrate Arroyo's lack of injuries, and to therefore debunk any argument that the defendant officers were reasonable to believe Arroyo's story.  The inconsistency between Arroyo's violent narrative and his normal physical condition would have shown Arroyo's blatant lies and the officers' unreasonable reliance on those lies in arresting and prosecuting Plaintiff.

With respect to the radio transmissions, it's true that these can be approximated based on the Sprint Reports.  But the Sprint Report doesn't tell us precisely what the defendant officers heard as they drove to the scene; nothing can substitute for the actual radio transmissions to show what the officers were hearing and thinking as they drove to the scene.

Finally, Plaintiff, through counsel, has expended considerable time and effort in pursuing the destroyed evidence, verifying the circumstances of its destruction, conferring with defense counsel and the NYPD's legal division, trying to obtain substitute discovery through the deposition of Fayola Robinson, researching spoliation, and making this motion.  *See* Joubin Decl. ¶¶ 5-15.

### 5.     **Appropriate Sanctions for Spoliation**

Under Rule 37(e)(1), appropriate sanctions should be curative and tethered to the prejudice caused by the spoliation.  Sanctions for evidence spoliation should seek to: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the

10

opposing party." *West*, 167 F.3d at 779 (internal quotation omitted). "It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include – from least harsh to most harsh – further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions)." *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014) (internal quotations omitted). "[T]he Second Circuit has endorsed four factors for a district court to consider in exercising its discretion to impose sanctions pursuant to Rule 37: (1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018) (internal quotations omitted).

Applying these principles here, the Court should ensure that Defendants do not benefit from their unjustified failure to preserve important audio-visual evidence that would have objectively shown what the officers heard and saw at the scene. To this end, in evaluating Defendants' summary judgment motion – and, potentially, at trial – the Court should preclude Officer Malvagna's testimony that Arroyo appeared injured. This sanction is appropriate because Malvagna destroyed the photographs that could have – and, from Plaintiff's perspective, would have – contradicted Malvagna's testimony. *See Ungar v. City of New York*, 329 F.R.D. 8, 14 (E.D.N.Y. 2018) ("[W]here a party destroys the only evidence that might vindicate their opponent's claims and thereby assumes victory themselves, the deterrent purposes of the spoliation doctrine may well be served

by an appropriate sanction, even without affirmative proof as to whether the evidence would have been advantageous to the movant.").

The Court should also preclude any testimony from the defendant officers that conflicts with the Sprint Report transcript of the radio run transmissions and with Fayola Robinson's testimony interpreting that transcript. The Court should ensure that the City cannot benefit from the destruction of the radio runs by allowing unfair cherry-picking of the Sprint Report entries. To this end, the Court should draw the reasonable inference that the sum and substance of *all* entries on the Sprint Report were conveyed over the radio to Officers Malvagna and Campanella as they drove to the scene.

Costs and reasonable attorney's fees are also warranted because of "economic prejudice" under Rule 37(e)(1). *Lokai,* 15-CV-9363 (ALC), 2018 U.S. Dist. LEXIS 46578, at *57-58 (ordering Defendants to "reimburse Lokai for the attorneys' fees and costs it has incurred in (a) raising with Defendants and the Court the issue of the ESI not initially produced in response to Lokai's document requests; (b) seeking to obtain substitute discovery via subpoenas served on third parties; and (c) bringing both its original and current motions for sanctions"). As reflected in the Joubin Declaration (ECF No. 91), Plaintiff's counsel has expended significant effort and resources on the issue of spoliation in this case, repeatedly pressing the City's attorneys to reveal what happened to the destroyed ESI, persisting on further explanations when their answers were inadequate, trying to discover what the destroyed ESI would have shown, and finally bringing this motion.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully asks this Court to grant his motion for spoliation sanctions, or grant such other relief as the Court deems just and proper.

Respectfully Submitted,

DATED: New York, New York
January 21, 2021

/s/
Cyrus Joubin, Esq.
43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com