USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/21/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VARDELL HUGHES,

                    Plaintiff,

                -against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE OFFICER STEPHEN MALVAGNA,
JOHN CAMPANELLA, LIEUTENANT CARLOS
FABARA, AND OFFFICERS JOHN DOES 1-5, in
their individual and official capacities,

                  Defendants.

1:18-cv-09380-MKV

MEMORANDUM
OPINION AND ORDER
GRANTING MOTION FOR
SUMMARY JUDGMENT
AND PARTIALLY GRANTING
MOTION FOR SANCTIONS

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Vardell Hughes asserts claims against Defendants the City of New York, Police

Lieutenant Carlos Fabara, and Police Officers Stephen Malvagna and John Campanella

(collectively, "Defendants") under 42 U.S.C. § 1983 and New York law for false arrest, malicious

prosecution, failure to intervene, and *respondeat superior* liability.  Defendants have moved for

summary judgment, seeking dismissal of all of Plaintiff's claims (Defs.' Mot. [ECF No. 84]), and

Plaintiff has cross-moved for spoliation sanctions (Pl.'s Mot. [ECF No. 91]).  For the reasons

discussed below, Defendants' motion is GRANTED and Plaintiffs' motion is GRANTED IN PART

AND DENIED IN PART.

## BACKGROUND

### A.  Factual Background[1]

      On the night of July 14, 2017, Plaintiff, his brother Larnell, and Selfjustice Gibson were

involved in a street brawl with Gamaliel Arroyo and his friends in Chelsea, Manhattan.  What

---

[1] The following facts are taken from the parties' Local Civil Rule 56.1 statements and the underlying record.
(Defs.' 56.1 Statement [ECF No. 86]; Pl.'s 56.1 Response [ECF No. 89]; Defs.' 56.1 Response [ECF No. 100].)

transpired before and during the fight is hotly contested. The Defendant officers responded to 911 calls and arrested Plaintiff, Larnell, and Gibson. As explained below, the dispositive issue on Defendants' summary judgment motion is whether Defendants had probable cause to arrest and charge Plaintiff. The following statement of facts describes the competing accounts of Arroyo and the Hughes brothers, then outlines the incident from the perspective of the Defendant officers.

According to Arroyo, Plaintiff, Larnell, and Gibson approached Arroyo and his five friends as they were walking to a deli. (Pl.'s 56.1 Response ¶ 7.) Larnell threatened Arroyo that he was going to "knock [his] head off." (Defs.' 56.1 Statement ¶ 12.) Then Larnell and Plaintiff attacked him. (*Id.* ¶¶ 13, 15.) Arroyo claims he was "punched and kicked "everywhere, my face, my stomach." (*Id.* ¶ 18.) Arroyo's friends fled, except for one who "squared up" with Gibson. (*Id.* ¶ 17.) Arroyo tried to flee into a store but was directed to leave. (*Id.* ¶ 20.) Arroyo left the store and continued to fight. (*Id.* ¶ 20.) Arroyo testified that "[a]t that time every body [sic] was throwing trash cans and garbage because I think my friends came back." (*Id.* ¶ 21.) Police arrived and broke up the fight. (*Id.* ¶ 23.)

According to Plaintiff, Arroyo and another man approached Plaintiff and Larnell after Plaintiff handed Larnell some cash. (Pl.'s 56.1 Response ¶¶ 43, 150.) Arroyo pulled a knife and attempted to rob Plaintiff and Larnell. (*Id.* ¶¶ 1, 12–14, 43.) Larnell responded, "I'm not giving you anything." (*Id.* ¶ 150.) Arroyo swung the knife at Larnell, grazing him (*id.* ¶¶ 18, 21, 45–46), so Larnell punched Arroyo (*id.* ¶¶ 49–50). Then approximately ten people attacked Plaintiff from behind. (*Id.* ¶¶ 51–53.) "Arroyo and his buddies had the upper hand throughout the fight," Plaintiff testified. (*Id.* ¶ 18; *see id.* ¶¶ 53–65.) During the fight, the individuals threw bottles and other trash at Plaintiff and Larnell. (*Id.* ¶ 65.) Arroyo and Larnell fell into nearby tree shrubs as they were fighting. (*Id.* ¶ 68.) Plaintiff observed Arroyo on top of Larnell, so he got on top of

Arroyo and began punching him.  (*Id.* ¶¶ 67–71.)  An unidentified man sprayed Larnell in the face with mace.  (*Id.* ¶ 72.)  Plaintiff punched the man and chased him off less than half a block away. (*Id.* ¶¶ 73–74.)  As police arrived, most of Arroyo's group fled.  (*Id.* ¶¶ 17, 156.)  At that moment, Plaintiff was heading "back to the area where Larnell and Arroyo were tussling."  (*Id.* ¶ 23; *see id.* ¶¶ 73–75.)

Defendant officers Malvagna and Campanella were on patrol that night when they received several radio transmissions regarding a large street fight.  (Pl.'s 56.1 Response ¶¶ 86–89.)  The dispatcher provided details about the fight, as reported by 911 callers.  (*Id.* ¶ 88.)  One radio transmission alerted the officers to fifteen people fighting, another to ten people fighting, another to ten people fighting and dispersing.  (Defs.' 56.1 Response ¶¶ 152–54.)  There were no reports of weapons being used.  (*See generally* Marquez Supp. Decl. Ex. E [ECF No. 87-5].)

Officers Malvagna and Campanella arrived on scene within minutes of the first radio transmission.  (Pl.'s 56.1 Response ¶ 90.)  Officer Malvagna testified that he observed Plaintiff and Larnell on top of Arroyo in a "planter," or "elevated flower bed."  (Defs.' 56.1 Statement ¶ 93.)  Officer Malvagna separated Arroyo and Plaintiff.  (*Id.* ¶ 100.)  Plaintiff, however, claims he was not near Arroyo when the police arrived (Pl.'s 56.1 Response ¶¶ 93, 100) but admits that at one point he, Larnell, and Arroyo were fighting in the tree shrubs (*id.* ¶¶ 68–71).

Officer Malvagna spoke to Arroyo and Plaintiff "to figure out what exactly happened." (*Id.* ¶¶ 101–02.)  Officer Malvagna testified that Arroyo informed him that he was physically attacked by Plaintiff, Larnell, and Gibson after a verbal dispute.  (Defs.' 56.1 Statement ¶¶ 103–04.)  One of Arroyo's friends corroborated Arroyo's account—that the Hughes brothers were the initial aggressors—to Officer Malvagna.  (Pl.'s 56.1 Response ¶ 108.)  According to Officer Malvagna, Arroyo was upset, loud, and appeared to be injured: his shirt was ripped, his back and

3

head were scratched, and his lip was bloody and swollen.  (Defs.' 56.1 Statement ¶¶ 105–07.)  However, Larnell testified that Arroyo had no noticeable injuries.  (Pl.'s 56.1 Response ¶ 105; *see* Joubin Opp. Decl. Ex. B ¶ 10 [ECF No. 88–2].)

Officer Malvagna testified that Plaintiff and Larnell told him that they were attacked by Arroyo and his group.  (Defs.' 56.1 Statement ¶ 109; Marquez Supp. Decl. Ex. C 35:10–37:6.)  Officer Malvagna claims Plaintiff and Larnell never said that Arroyo's group demanded money.  (Marquez Supp. Decl. Ex. C 37:7–37:10.)  But Plaintiff and Larnell both testified that they told Officer Malvagna that Arroyo and his friends demanded money from them.  (Pl.'s 56.1 Response ¶ 109; Defs.' 56.1 Response ¶ 159; Marquez Supp. Decl. Ex. B 31:15–31:18, 41:2–41:10; Joubin Opp. Decl. Ex. B ¶¶ 12–13.)  Officer Malvagna testified that he did not observe injuries, scratches, or marks on Plaintiff (Defs.' 56.1 Statement ¶ 110), while Plaintiff testified that he had visible scratches and marks on his face, arms, and legs (Pl.'s 56.1 Response ¶ 110).

Officer Malvagna spoke with several witnesses.  Two witnesses told him that Plaintiff, Larnell, and Gibson had "attacked" and were "beating up" Arroyo.  (Defs.' 56.1 Statement ¶ 112; Marquez Supp. Decl. Ex. C 49:9–50:15.)  A third witness told him that Plaintiff, Larnell, and Gibson started the fight.  (Defs.' 56.1 Statement ¶ 113; Marquez Supp. Decl. Ex. C 62:6–62:10.)  Most of Arroyo's friends refused to speak with police and left to avoid getting arrested.  (Pl.'s 56.1 Response ¶ 157.)

Officer Malvagna testified that after hearing from the parties and witnesses, the police decided to handcuff and arrest Plaintiff, Larnell, and Gibson.  (Defs.' 56.1 Statement ¶ 113.)  Plaintiff, however, testified that police placed him in handcuffs before he gave Officer Malvagna his side of the story.  (Pl.'s 56.1 Response ¶ 113; Marquez Supp. Decl. Ex. B 34:5–34:16.)  Officer

Malvagna testified that he did not know who made the call to arrest Plaintiff, though he believed all officers reached the same conclusion as to what had happened.  (Pl.'s 56.1 Response ¶ 116.)

Plaintiff, Larnell, and Gibson were transported to the 10th Precinct.  (*Id.* ¶ 118.)  Officer Malvagna testified that he did not observe any injuries on them resembling a knife wound.  (Defs.' 56.1 Statement ¶ 120.)  A photograph of Larnell's arm reflects a minor cut that Larnell claims he sustained when Arroyo slashed him.  (Pl.'s 56.1 Response ¶ 120; Joubin Opp. Decl. Ex. B ¶ 6 & sub-Ex. A.)  Plaintiff's mugshot shows minor swelling around Plaintiff's left eye.  (Marquez Supp. Decl. Ex. J [ECF No. 87-10].)  Officer Malvagna took photographs of Plaintiff, Larnell, Gibson, and Arroyo on his NYPD-issued smartphone.  (Marquez Supp. Decl. Ex. C 52:3–53:6, 59:3–59:13.)

Plaintiff was issued a desk appearance ticket.  (Pl.'s 56.1 Response ¶ 122.)  Officer Malvagna was designated as the arresting officer and signed the criminal court complaint.  (*Id.* ¶¶ 121, 123.)  Plaintiff was charged with assault in the third degree, N.Y. Penal Law § 120.00(1)–(2), attempted assault in the third degree, N.Y. Penal Law § 110, and harassment in the second degree, N.Y. Penal Law § 240.26(1).  (*Id.* ¶ 140.)  Plaintiff's prosecution was later dismissed on speedy trial grounds pursuant to New York Criminal Procedure Law § 30.30.  (*Id.* ¶ 142.)

On January 8, 2018, Plaintiff filed a Notice of Claim with the New York City Law Department.  (Joubin Supp. Decl. Ex. A [ECF No. 92-1].)  The Notice of Claim summarized the legal claims now alleged in this action; stated the date, time, and place of Plaintiff's arrest; identified Officer Malvagna specifically; and provided the docket number for the criminal case against Plaintiff.  (*See id.*)  Ten days later, on January 18, 2018, Officer Malvagna exchanged his NYPD-issued cell phone for a new one, and consequently, all of the data, including the photographs of Plaintiff, Larnell, Gibson, and Arroyo, were erased.  (*See* Marquez Supp. Decl. Ex.

C 34:10–34:17; Joubin Supp. Decl. Ex. C [ECF No. 92-3].)  On July 14, 2018, the NYPD Tape and Records Unit deleted the 911 calls and radio transmissions, pursuant to the 365-day audio retention policy of the NYPD.  (Joubin Supp. Decl. Ex. E ¶¶ 3–5 [ECF No. 92-5].)

## B. Procedural Background

Plaintiff commenced this action in October 2018 by filing the Complaint, (Compl. [ECF No. 1],) and amended his pleading twice thereafter.  (First Am. Compl. [ECF No. 17]; Second Am. Compl. [ECF No. 28].)  The Second Amended Complaint asserts causes of action for false arrest, malicious prosecution, failure to intervene, and municipal liability under Section 1983 and for malicious prosecution, unreasonable search and seizure (*i.e.*, false arrest), negligent hiring and training, and *respondeat superior* under New York law.  (Second Am. Compl. ¶¶ 69–100.)

At the close of discovery, Plaintiff acknowledged in connection with a pre-motion letter to the Court that he cannot establish a Section 1983 claim for municipal liability (the *Monell* claim) and that, because he failed to timely file a notice of claim, he cannot bring state law claims for false arrest and that his negligent hiring and training claim should be dismissed for lack of evidence. (Pl.'s Letter Dec. 11, 2020 [ECF No. 82], at 3.)  The Court deems these claims abandoned.

Defendants have moved for summary judgment on Plaintiff's five remaining claims: false arrest, malicious prosecution, and failure to intervene under Section 1983 and malicious prosecution and *respondeat superior* under New York law.  (Defs.' Mot. Summ. J. [ECF No. 84].) In support of their motion, Defendants filed a memorandum of law (Defs.' Br. [ECF No. 85]), a Local Rule 56.1 Statement (Defs.' 56.1 Statement [ECF No. 86]), and the Declaration of Jorge Marquez (Marquez Supp. Decl. [ECF No. 87]).  In opposition, Plaintiff filed a memorandum of law (Pl.'s Opp. Br. [ECF No. 90]), a Local Rule 56.1 Counterstatement (Pl's 56.1 Response [ECF

No. 88]), and the Declaration of Cyrus Joubin (Joubin Opp. Decl. [ECF No. 89]).  In reply, Defendants filed a memorandum of law (Defs.' Reply Br. [ECF No. 98]), a Local Rule 56.1 Counterstatement responding to Plaintiff's additional assertions of fact (Defs.' 56.1 Response [ECF No. 100]), and the Declaration of Jorge Marquez (Marquez Reply Decl. [ECF No. 99]).

Plaintiff has cross-moved for spoliation sanctions concerning Defendants' failure to preserve the photographs on Officer Malvagna's cell phone, the 911 calls, and the radio transmissions.  (Pl.'s Mot. Sanctions [ECF No. 91].)  In support of his motion, Plaintiff filed a memorandum of law (Pl.'s Br. [ECF No. 93]) and the Declaration of Cyrus Joubin (Joubin Supp. Decl. [ECF No. 92]).  In opposition, Defendants filed a memorandum of law (Defs.' Opp. Br. [ECF No. 101]) and the Declaration of Jorge Marquez (Marquez Opp. Decl. [ECF No. 102]).  Plaintiff filed a memorandum of law in reply.  (Pl.'s Reply Br. [ECF No. 104].)

## LEGAL STANDARDS

### A.  Summary Judgment

"Summary judgment is appropriate only when, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor

of the party against whom summary judgment is sought." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing *Anderson*, 477 U.S. at 255; and *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the moving party may satisfy his burden either: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).

If the moving party satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249). The opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); then quoting *FDIC v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (noting that the opposing party "must offer some hard evidence showing that its version of the events is not wholly fanciful").

**B.  Spoliation Sanctions**

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re*

*Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007)).   Federal Rule of Civil Procedure 37(e)(1) provides that a court "may order measures no greater than necessary to cure the prejudice" from spoliation if electronically stored information ("ESI") "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e)(1).

Sanctions available under Rule 37(e)(1) include "monetary sanctions, forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument."  *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. CV 18-1997 (JS) (AKT), 2021 WL 2788432, at *6 (E.D.N.Y. July 2, 2021) (citing *Lokai Holdings, LLC v. Twin Tiger USA LLC*, No. 15-CV-9363, 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018)).   "The decision of what type of sanction is appropriate in a given case is left to the sound discretion of the district court."  *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706–07 (S.D.N.Y. 2017) (collecting cases).

## DISCUSSION

## I.   Summary Judgment

### 1.   Defendants Had Probable Cause To Arrest Plaintiff And Therefore Are Entitled To Summary Judgment On The Section 1983 Claim For False Arrest

In analyzing a claim for false arrest under Section 1983, courts look to the law of the state in which the arrest occurred.  *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  To prevail on a claim for false arrest under New

York law, the plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)).

Probable cause "is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)). "Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (ellipses and alteration omitted) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). In determining whether an officer had probable cause, courts may consider only "those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis omitted) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)). A false arrest claim "turns on whether probable cause existed to arrest *for any crime*, not whether probable cause existed with respect to each individual charge." *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012) (emphasis added) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–56 (2004)).

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta*, 460 F.3d at 395 (first quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); then citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). In assessing a putative victim's veracity, courts consider, *inter*

*alia*, "the officer's observation of the putative victim's physical injuries," "the level of detail and consistency in the putative victim's description of events," and "incriminating statements by the plaintiff." *Williams v. Schultz*, No. 06-CV-1104, 2008 WL 4635383, at *9 & n.59 (N.D.N.Y. Oct. 16, 2008) (collecting cases).  In determining whether probable cause exists, "an officer may not disregard plainly exculpatory evidence." *Panetta*, 460 F.3d at 395 (citing *Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001)).

Plaintiff was arrested for third-degree assault, among other charges.  A person commits third degree assault when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person; or [h]e recklessly causes physical injury to another person."  N.Y. Penal Law § 120.00(1)–(2).  Physical injury is defined to include "impairment of physical condition or substantial pain." *Id.* § 10.00(9).

The record clearly establishes that Defendants had probable cause to arrest Plaintiff for third-degree assault.  Officer Malvagna received a call about a physical fight between a group of males.  (Pl.'s 56.1 Response ¶¶ 86–89.)  When he arrived at the scene, Officer Malvagna was informed by Arroyo that Plaintiff had attacked him.  (Defs.' 56.1 Statement ¶¶ 103–04; Pl.'s 56.1 Response ¶¶ 103–04.)  One of Arroyo's friends corroborated Arroyo's account.  (Pl.'s 56.1 Response ¶ 108.)  Plaintiff also claims that Officer Malvagna would have seen that Plaintiff had visible scratched and marks on his face, arms, and legs, (Pl.'s 56.1 Response ¶ 108,) which would only support the inference that Plaintiff was involved in a fight.  Finally, Plaintiff admitted to Officer Malvagna that he was involved in the fight.  (*See* Pl.'s 56.1 Response ¶ 79.)  These facts establish probable cause to arrest Plaintiff for assault.

The fact that Plaintiff and Larnell offered a conflicting account does not vitiate the probable cause to arrest Plaintiff. *See, e.g.*, *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 205 (E.D.N.Y.

2014) ("The Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification or alleged victim of a crime." (collecting cases)); *see also Panetta*, 460 F.3d at 395–96 (noting that "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause"); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (finding that conflicting accounts of arrestee and eyewitnesses did not undermine probable cause established by eyewitness's statements inculpating arrestee). Plaintiff's claims that he acted in self-defense (Pl.'s Opp. Br. 9, 14) do not undermine the officers' probable cause determination. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (finding probable cause supported by statement of victim identifying plaintiff as his assailant and victim's visible injuries, despite plaintiff's claims that he was innocent and acted in self-defense).

In claiming that Arroyo "provided a fantastical tale" that should not have been credited by the officers, Plaintiff focuses on the visible injuries Plaintiff, Larnell, and Arroyo each had and the size of each person. (Pl.'s Opp. Br. 5, 10–11.) But the fact "one participant in a fight is injured less than the other does not approach" the "'plainly exculpatory evidence' exception to the establishment of probable cause by a complainant's statement." *Sforza v. City of New York*, No. 07 Civ. 6122(DLC), 2009 WL 857496, at *14 (S.D.N.Y. Mar. 31, 2009) (noting that "[t]he possibility that both parties were injured may indicate the existence of probable cause to arrest the [victim] as well, but the [victim's] lack of severe injury does not indicate that no fight occurred or that the [victim] was not punched or kicked"). While Plaintiff disputes whether Arroyo had any visible injuries, evidence in the record "show[s] that the officers had the impression that he did." *Id.* (*See* Defs.' 56.1 Statement ¶ 105; Marquez Supp. Decl. Ex. A 29:16–29:18, 31:3–31:5 (Arroyo testifying that officers "seemed to be concerned about" his head injuries and "wanted the

ambulance to check on me"); Marquez Supp. Decl. Ex. I [ECF No. 87-9] (criminal complaint signed by Officer Malvagna describing Arroyo's injuries); Marquez Supp. Decl. Ex. L [ECF No. 87-12] (aided card documenting Arroyo's injuries).)  The fact that Arroyo did not suffer more severe injuries despite Plaintiff and Larnell being larger than he did not make it unreasonable for the officers to have credited Arroyo's account.

Plaintiff argues that a jury could find that it was objectively unreasonable for the officers not to have asked Arroyo and the eyewitnesses certain follow-up questions.  (Defs.' Opp. Br. 5–6, 17–18, 24; *see* Pl.'s 56.1 Response ¶¶ 171–75.)  But "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Curley*, 268 F.3d at 70 (alteration omitted) (quoting *Ricciuti*, 124 F.3d at 128); *see also Panetta*, 460 F.3d at 396 (alteration omitted) (noting that "once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury" (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989))).

Accordingly, the Court grants summary judgment for Defendants on the false arrest claim.

**2.  The Record Objectively Established That There Was Probable Cause To Prosecute Plaintiff And Therefore, Defendants Are Entitled To Summary Judgment On The Claims For Malicious Prosecution Under Both Section 1983 And New York State Law**

To prevail on a claim for malicious prosecution under Section 1983 and under New York law, a plaintiff must establish the same four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions."  *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (quoting *Murphy*

*v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). "Because lack of probable cause is an element of a malicious prosecution claim, 'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" *Stansbury*, 721 F.3d at 94–95 (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010)).

The probable cause determination relevant to a malicious prosecution claim differs slightly from that relevant to a false arrest claim. *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000); *see Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999). "In the malicious prosecution context, probable cause is defined as 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Diop v. City of New York*, 50 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)). Unlike an arrest, prosecution requires probable cause for *each* of the crimes charged. *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). Moreover, probable cause to prosecute "is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of the arrest." *Sankar v. City of New York*, 867 F. Supp. 2d 297, 311 (E.D.N.Y. 2012) (quoting *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)). Therefore, "information discovered by a malicious prosecution defendant after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause in cases where the prosecution follows a warrantless arrest." *Jackson v. City of New York*, 939 F. Supp. 2d 235, 251 (E.D.N.Y. 2013) (quoting *Mejia*, 119 F. Supp. 2d at 254).

The Court's finding of probable cause to arrest Plaintiff for third-degree assault precludes Plaintiff's malicious prosecution claims with respect to the third-degree assault and attempted third-degree assault charges because there was no new information learned by the officers between

14

the arrest and swearing of the criminal complaint that undermines the probable cause determination made at the time of arrest. *See Castro v. County of Nassau*, 739 F. Supp. 2d 153, 169 (E.D.N.Y. Sept. 13, 2010) (granting summary judgment on malicious prosecution claim based on underlying probable cause to arrest because there was "no evidence" that defendants became aware of any information for probable cause to dissipate); *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 202 (E.D.N.Y. 2010) (granting summary judgment on malicious prosecution claim where "plaintiff [did] not ma[k]e the Court aware of any post-arrest facts that would alter the initial finding of probable cause"); *Merritt v. Dunlap*, No. 1:01-CV-1487HGMRFT, 2005 WL 3601645, at *9 (N.D.N.Y. Dec. 30, 2005) (granting summary judgment where the court "already found that defendants had probable cause to arrest plaintiff, and the record reveals that no intervening fact emerged to dissipate the probable cause that existed at the arrest stage prior to the commencement of the prosecution").

Plaintiff's malicious prosecution claim relating to his second-degree harassment charge fails because the only reasonable conclusion from the record is that there was probable cause to believe Plaintiff could be prosecuted for this offense. "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . . ." N.Y. Penal Law § 240.26(1). "The crux of section 240.26(1) is the element of physical contact: actual, attempted or threatened." *People v. Bartkow*, 96 N.Y.2d 770, 772, 749 N.E.2d 158, 725 N.Y.S.2d 589 (2001). The statute covers "petty forms of offensive touching" that do not rise to the level of assault. *Id.*

The same facts that establish probable cause for the assault charges—reliance on statements of Arroyo and eyewitnesses and Plaintiff's admission that he was involved in the

fight—establish probable cause for the second-degree harassment charge. *See Nix v. City of Rochester*, No. 6:14-cv-06395(MAT), 2017 WL 3387103, at *6–7 (W.D.N.Y. Aug. 5, 2017) (granting summary judgment on malicious prosecution claim where officers had probable cause to charge second-degree harassment based on 911 dispatch call and accurate description of plaintiff); *Hotaling v. LaPlante*, 167 F. Supp. 2d 517, 523 (N.D.N.Y. 2001) (granting summary judgment on malicious prosecution claim relating to second-degree harassment charge where officer relied on corrections officer's account and statements of corroborating witnesses); *Mars v. City of New York*, Nos. 01–278, 01–279, 2002 WL 83697, at *1 (N.Y. 1st Dep't Jan. 8, 2002) (per curiam) (granting summary judgment on malicious prosecution claim where complainant's statements and plaintiff's admissions of involvement in dispute established probable cause).

Accordingly, the Court grants summary judgment for Defendants on the malicious prosecution claims.

### 3. Defendants Are Entitled To Summary Judgment On The Section 1983 Failure To Intervene Claim Since There Were No Primary Constitutional Violations

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "[A] failure to intervene claim is contingent only on the underlying claim." *Arbuckle v. City of New York*, 14-CV-10248 (ER), 2016 WL 5793741, at *14 (S.D.N.Y. Sept 30, 2016) (citing *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012)). Accordingly, "there can be no failure to intervene claim without a primary constitutional violation." *Sanabria v. Tezlof*, No. 11 Civ. 6578 (NSR), 2016 WL

4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (quoting *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015)); *see Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009).

Plaintiff's failure to intervene claim fails as a matter of law because there was probable cause to arrest and to charge Plaintiff.  *See Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary judgment) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim. (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988))); *Soto v. City of New York*, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (granting summary judgment for defendants on failure to intervene claim where underlying claims for false arrest and malicious prosecution failed); *Feinberg v. City of New York*, No. 99CV12127(RC), 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) (granting summary judgment on failure to intervene claim where officers had probable cause to arrest and charge plaintiff).  Accordingly, the Court grants Defendants' motion on the failure to intervene claim.

4.  **Defendants Are Entitled To Summary Judgment On The *Respondeat Superior* Claim Since There Is Not Actionable Underlying Claim**

Plaintiff asserts a *respondeat superior* claim against the City.  (Compl. ¶¶ 97–100.)  Having granted summary judgment for the individual Defendants on Plaintiff's state-law malicious prosecution claim and there being no surviving underlying theory of liability, Plaintiff's *respondeat superior* cause of action fails.  *Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996); *see also Ikezi v. City of New York*, No. 14-CV-5905 (MKB), 2017 WL 1233841, at *16 (E.D.N.Y. Mar. 31, 2017) ("Because the Court grants Defendants' motion for summary judgment and dismisses Plaintiffs' state-law false arrest claims, the Court also dismisses the *respondeat superior* claims." (citing *Conte v. County of Nassau*, 596 F. App'x 1, 3 (2d Cir. 2014) (summary order))); *Stevens v.*

17

*City of New York*, No. 10 Civ. 2172(KBF)(JLC), 2012 WL 5862659, at *4, n.6 (S.D.N.Y. Nov. 14, 2012) (finding "no substantive offense for which the City of New York can be held vicariously liable" upon dismissing state-law claims against individual police officers).  Accordingly, the Court grants summary judgment in Defendants' favor and dismisses the *respondeat superior* claim.

## II.    Spoliation Sanctions

Plaintiff moves for sanctions under Rule 37(e)(1) based on Defendants' spoliation of the photographs of Plaintiff, Larnell, Gibson, and Arroyo taken by Officer Malvagna on his cell phone and the 911 calls and radio transmissions that alerted police to the scene.  (Pl.'s Supp. Br. 1–5.) For Plaintiff to prevail on his motion, the Court must determine whether (1) the ESI should have been preserved in the anticipation of litigation, (2) it was lost because Defendants failed to take reasonable steps to preserve it, (3) it cannot be entirely restored or replaced, and (4) Plaintiff was prejudiced as a result.

### 1.    The ESI Should Have Been Preserved

The obligation to preserve evidence is based on a two-part inquiry: (1) when did the obligation arise and (2) to what evidence did the duty attach.  *Jacquety v. Baptista*, No. 19-CV-9642 (RWL), 2021 WL 1885263, at *10 (S.D.N.Y. May 11, 2021).  The obligation "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence *may* be relevant to future litigation."  *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (emphasis added) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  "Pursuant to this obligation, 'anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary.'"  *Estate of Jackson v. County of Suffolk*, No. 12–1455 (JFB)(AKT), 2014 WL 1342957, at *9 (E.D.N.Y. Mar. 31, 2014) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)).

In this context, "'relevance' means relevance for purposes of discovery, which is 'an extremely broad concept.'" *Orbit One Commc'ns v. Numerex Corp.*, 271 F.R.D. 429, 436–37 (S.D.N.Y. 2010) (collecting cases).  A litigant thus "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, [or] is reasonably likely to be requested during discovery." *Zubulake*, 220 F.R.D. at 217 (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).

Defendants' duty to preserve the photographs and radio transmissions arose on January 8, 2018, when Plaintiff served his Notice of Claim on the New York City Law Department.  (Joubin Supp. Decl. Ex. A.)  And yet, ten days later, Officer Malvagna exchanged his official phone and all of the information on the original phone was erased, including photos of the day of the incident.  A little under six months after the Notice of Claim was served on Counsel to Defendants, the 911 calls and the radio transmissions were deleted consistent with the NYPD retention policy.

Upon receipt of the Notice of Claim, Defendants should have known that photographs of individuals involved in the altercation and the 911 and dispatch transmissions may be relevant to anticipated litigation.  *See Man Zhang v. City of New York*, No. 17-CV-5415 (JFK) (OTW), 2019 WL 3936767, at *6 (S.D.N.Y. Aug. 20, 2019) (finding duty to preserve arose "when Plaintiffs filed their Personal Injury Claim Form, providing explicit notice of a forthcoming wrongful death and medical malpractice lawsuit"); *Field Day, LLC v. County of Suffolk*, No. 04–2202, 2010 WL 1286622, at *4 (Mar. 25, 2010) (holding that "the County was put on notice of the potential for future litigation when it received [plaintiff's] notice of claim and its duty to preserve arose on that date").  Immediately upon receipt of the Notice of Claim, it was incumbent on the New York City Law Department to put a "litigation hold" on any potential relevant evidence and to advise any custodian that such evidence must be preserved.  See *Man Zhang*, 2019 WL 3936767, at *6.

Defendants' arguments to the contrary are baseless.  (Defs.' Opp. Br. 5–16.)  Defendants assert that Plaintiff failed to take affirmative steps to prevent the destruction of evidence.  (Pl.'s Opp. Br. 14–16, 22.)  For Defendants to concede that evidence was destroyed yet attempt to shift the blame to Plaintiff "flies in the face of well-established civil litigation practice that a defendant, upon notice of a lawsuit, instructs its officials to preserve pertinent documents."  *Herman v. City of New York*, 334 F.R.D. 377, 382 (E.D.N.Y. 2020).  While it may have been prudent of Plaintiff to include in his Notice of Claim language requesting preservation of evidence, he was not obligated to do so; the Notice of Claim alone triggered Defendants' duty to preserve.  *See Alter v. Rocky Point Sch. Dist.*, No. 13–1100 (JS)(AKT), 2014 WL 4966119, at *9 (E.D.N.Y. Sept. 30, 2014) (finding duty to preserve triggered "as soon as the Notice of Claim was filed in November 2010—at which point litigation was or should have been reasonably anticipated by the Defendants" (citing *Sekisui American Corp. v. Hart*, 945 F. Supp. 2d 494, 494 (S.D.N.Y. 2003))).  The fact that six months passed from Plaintiff's arrest to his filing of the Notice of Claim is immaterial.  *See Steinsnyder v. United States*, No. 09–CV–5407 (KAM), 2013 WL 1206451, at *14 (E.D.N.Y. Feb. 8, 2013) (finding that filing of claim with agency six months after accident triggered duty to preserve).

Moreover, Plaintiff was not obligated to serve the Notice of Claim on Officer Malvagna personally.  *See* N.Y. Gen. Mun. Law § 50–e(1)(b); *Ruiz v. Herrera*, 745 F. Supp. 940, 945 (S.D.N.Y. 1990) (holding that plaintiff "was required to serve a notice of claim on the village of Port Chester as a condition precedent to filing this civil action against the police officers").  Plaintiff served the Notice of Claim on the Law Department, the attorney for and agent of the City and the NYPD.  (Joubin Supp. Decl. Ex. A.)  Once the Notice of Claim was served, the City, and specifically its counsel, were obligated to notify individuals who might be in possession of

potentially relevant evidence to ensure that such evidence be preserved. *See Herman*, 334 F.R.D. at 385. It is well established that "[t]he preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Id.* (quoting *Chan v. Triple 8 Palace, Inc.*, No. 03-CV-6048, 2005 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005)). Once the Law Department received the Notice of Claim—which specifically named Officer Malvagna—the obligation to preserve evidence ran not only to the City but also to its employees, including Officer Malvagna. *Cf. Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475, 2015 WL 5027899, at *18 (E.D.N.Y. Aug. 25, 2015) (noting that "where a business . . . is under a duty to preserve, its corporate officers and managers have an affirmative responsibility to communicate the preservation obligation to its employees" (citing *Orbit One Commc'ns, Inc.*, 271 F.R.D. at 437; and *Turner*, 142 F.R.D. at 73)), *report & recommendation adopted*, 2016 WL 128154 (E.D.N.Y. Jan. 12, 2016).

Defendants' qualified immunity argument is misplaced. Qualified immunity "protects government officials from *suits* seeking to impose personal liability for money *damages* based on unsettled rights or on conduct that was not objectively unreasonable." *Tenenbaum v. Williams*, 193 F.3d 581, 595–96 (2d Cir. 1999) (emphasis added) (quoting *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)). Plaintiff's motion for spoliation sanctions falls in a completely different category. Tellingly, Defendants do not cite one case where qualified immunity has shielded government officials from their duty to preserve potentially relevant evidence once litigation is or reasonably should have been anticipated or from spoliation sanctions for failure to ensure said evidence is preserved.

Finally, the size of the City and the "inherent inefficiencies related to such bureaucracies" (Defs.' Opp. Br. 16) does not excuse Defendants of their duty to preserve evidence. *See Jacob v. City of New York*, No. 07cv04141 (KAM)(MDG), 2009 WL 383752, at *1 (E.D.N.Y. Feb. 6, 2009) (noting that the "difficulties that counsel may face in representing a large municipality with many independent agencies such as the Police Department . . . does not obviate discovery obligations"). Indeed, several courts have directed the City and Law Department to address issues relating to evidence preservation. *See Martinez v. City of New York*, No. 16 CV 79 (AMD) (CLP), 2018 WL 604019, at *34 (E.D.N.Y. Jan. 24, 2018) (encouraging the City and its counsel "to evaluate the systems currently in place for storing, maintaining, indexing, and accessing records of the NYPD, and to review with all involved the preservation and production obligations attendant to litigation"); *Jacob*, 2009 WL 383752, at *1 (urging "the Corporation Counsel's office and legal department of the Police Department to consider measures to insure that prompt efforts are undertaken to preserve [911] tapes once litigation is anticipated").

Accordingly, the Court finds that the ESI should have been preserved.

### 2. The ESI Was Lost Because Defendants Failed To Take Reasonable Steps To Preserve It

"Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Lokai Holdings*, 2018 WL 1512055, at *11 (quoting *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 118 (S.D.N.Y. 2008)). Counsel is "obligated to 'oversee compliance with [a] litigation hold, monitoring the party's efforts to retain and produce the relevant documents,' and to 'become fully familiar with [their] client's document retention policies, as well as the client's data retention architecture.'" *Id.* (alterations in original) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431–32 (S.D.N.Y. 2004)). "Where a party fails to timely institute 'a formal litigation

hold and otherwise informally preserve ESI,' the Court can conclude that it did not undertake reasonable steps to preserve ESI." *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y. 2020) (quoting *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-cv-2926 (DRH)(SIL), 2019 WL 5694256, at *10 (E.D.N.Y. July 22, 2019), *report & recommendation adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020)).

The "reasonable step" prong is "equate[d] to roughly a negligence standard." *Leidig v. Buzzfeed, Inc.*, No. 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017) (citing *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding America, Inc.*, 873 F.3d 85, 129 (2d Cir. 2017)).  "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Charlestown Capital*, 337 F.R.D. at 61 (quoting *Zubulake*, 220 F.R.D. at 220).

Defendants irrefutably failed to take reasonable steps to preserve the photographs, 911 calls, and radio transmissions since they did not suspend routine evidence retention and destruction policies or implement a litigation hold when they received Plaintiff's Notice of Claim. *Charlestown Capital*, 337 F.R.D. at 61 (quoting *Capricorn Mgmt.*, 2019 WL 5694256, at *10). Consequently, the photographs on Officer Malvagna's cell phone were not preserved when Officer Malvagna exchanged his NYPD-issued phone for a new one (*see* Joubin Supp. Decl. Ex. B at 34:7–35:9), and the 911 calls and radio transmissions were automatically deleted pursuant to the audio retention policy of the NYPD (*see* Joubin Supp. Decl. Ex. E ¶¶ 3–5).

The parties' dispute over whether Officer Malvagna complied with NYPD Operations Order No. 20, which concerns data retention on NYPD-issued smartphones (*see* Pl.'s Supp. Br. 3, 8; Defs.' Opp. Br. 9–11), is irrelevant because standard evidence retention policies of this sort should be suspended and a litigation hold must be implemented when litigation is anticipated.

*Lokai Holdings*, 2018 WL 1512055, at *11; *see Stinson v. City of New York*, No. 10 Civ. 4228, 2016 WL 54684, at *4–5 (S.D.N.Y. Jan. 5, 2016) ("The failure to circulate a litigation hold, and to ensure that it was properly implemented, was particularly damaging in the context of the NYPD's standing document retention policies, which ensured that inaction on the part of the City would result in the destruction of evidence.").

Defendants argue that they acted reasonably by generating a SPRINT report, which "reflects information inputted by the 9-1-1 operator as it is being provided over the telephone and/or radio communication." (Defs.' Opp. Br. 7–8, 16–17.) The advisory committee notes to Rule 37(e) provides that "[a] party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective as more costly forms." Fed. R. Civ. P. 37(e), advisory comm. n., 2015 amend. But courts have recognized that "[i]n most instances, Sprint reports are not a satisfactory substitute." *Jacob*, 2009 WL 383752, at *1; *see also People v. Hagen*, 247 A.D.2d 405, 406, 669 N.Y.S.2d 49, 50 (N.Y. App. Div. 1998) ("The defendant correctly contends that the 'Sprint reports' are not the 'duplicative equivalents' of 911 tapes."); *DeJesus v. Superintendent of Attica Corr. Facility*, No. 17 Civ. 3932 (GBD) (AJP), 2017 WL 6398338, at *32 (S.D.N.Y. Dec. 13, 2017) (noting state judge's observation that "'the Sprint report is not the duplicative equivalent' of the 911 tape").[2]

---

[2] In *Jacob*, the Eastern District specifically considered the issue of the Police Department destroying tapes once the obligation to preserve evidence arises and concluded that the Law Department must put in place litigation holds to ensure the preservation of documents. *See* 2009 WL 383752, at *1. However, outside of this case, there is not much federal caselaw addressing this issue in the context of spoliation. New York State courts have considered this issue as well and have concluded that "'Sprint reports' are not the 'duplicative equivalents' of 911 tapes." *Hagen*, 247 A.D.2d at 406. The ruling in *Hagen* relied on a Court of Appeals of New York decision, in which the Court of Appeals concluded that testimony or even a transcript of a lost or destroyed police document is not a substitute for the original document because "inadvertent errors, omissions and deletions can occur, giving rise to precisely the kind of discrepancies that

On the undisputed factual record before it, the Court finds that the ESI was lost because Defendants failed to take reasonable steps to preserve it.  *See Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 429 (W.D.N.Y. 2017) (finding failure to take reasonable steps where "defendants destroyed or recycled [a] laptop despite knowing that it likely contained relevant evidence that they never confirmed had been properly uploaded to another repository"); *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 326 (S.D.N.Y. 2013) (finding breach of duty to preserve where party "did not institute a litigation hold and did not suspend its routine document destruction policies, including its one-year retention policy for emails").

### 3.  The ESI lost Cannot Be Entirely Restored or Replaced

It is undisputed that the ESI cannot be entirely restored or replaced.  The photographs cannot be recovered since Officer Malvagna's cell phone "was wiped/erased of all data" (Joubin Supp. Decl. Ex. J [ECF No. 92-10]), and the 911 calls and radio transmissions have been permanently deleted (Joubin Supp. Decl. Ex. E ¶¶ 4–5; *see also* Joubin Supp. Decl. Ex. D [ECF No. 92-4]).  As noted, courts previously have ruled that the Sprint report is not a satisfactory substitute, *Jacob*, 2009 WL 383752, at *1, and as such, the City and NYPD cannot be heard to argue that it was appropriate to continue unabated the implementation of its routine audio retention policy once a Notice of Claim was served.

### 4.  Whether Plaintiff Was Prejudiced As a Result

Rule 37(e) does not clearly define prejudice.  *Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018).  The advisory committee notes explain that "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the

---

are most useful in cross-examination."  *People v. Joseph*, 86 N.Y.2d 565, 658 N.E.2d 996 (N.Y. 1995).

litigation." Fed. R. Civ. P. 37(e), advisory comm. n., 2015 amend.  Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other" and "leaves judges with discretion to determine how best to assess prejudice in particular cases." *Id.*

The Second Circuit has cautioned district courts against "holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence." *Kronisch*, 150 F.3d at 128.  Yet, a court "must have some evidence regarding the particular nature of the missing ESI in order to evaluate the prejudice it is being requested to mitigate." *Moody*, 271 F. Supp. 3d at 430 (quoting *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, *5 (E.D.N.C. 2017)).

Plaintiff claims the destruction of the photographs "deprived him of the opportunity to decisively demonstrate Arroyo's lack of injuries, and to therefore debunk any argument that the defendant officers were reasonable to believe Arroyo's story." (Pl.'s Supp. Br. 10.)  Plaintiff also claims that the Sprint Report does not reflect precisely what the officers heard as they approached the scene.  (*Id.*)  In addition, Plaintiff claims "economic prejudice" through attorneys' fees and costs incurred in addressing the spoliation issues. (*Id.* at 12.)  Plaintiff asks the Court to (i) preclude Officer Malvagna's testimony that Arroyo appeared injured; (ii) preclude any testimony of Defendants that conflicts with the Sprint Report, (iii) infer that the substance of all entries on the Sprint Report were conveyed over the radio to Officers Malvagna and Campanella, and (iv) award attorneys' fees for counsel's work in seeking the ESI and bringing this motion.  (*Id.* at 11–12.)

Even if the Court were to grant the first three forms of relief, the Court's ruling on Defendants' summary judgment motion would not change.  Even without Officer Malvagna's testimony, there is sufficient evidence indicating that Arroyo was beaten by Plaintiff and had sustained visible injuries, including, Arroyo's testimony, the criminal complaint, and the aided

card.  (*See* Marquez Supp. Decl. Ex. A 29:16–29:18, 31:3–31:5; Marquez Supp. Decl. Ex. I; Marquez Supp. Decl. Ex. L.)  This evidence, Arroyo's account at the scene, and the corroborating statements of multiple eyewitnesses established probable cause to arrest and charge Plaintiff. Furthermore, the Sprint Reports did not influence the Court's conclusions with respect to the lack of merit of the Plaintiff's claims.

The Court nevertheless concludes that an award of attorneys' fees and costs is appropriate here.  It is well-established that "misconduct that causes a party to incur additional expenses is a form of prejudice that supports an award of sanctions pursuant to Rule 37(e)."  *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-1254 (SHS), 2021 WL 1172265, at *5 (S.D.N.Y. Mar. 29, 2021) (citing *Karsch v. Blink Health Ltd.*, No. 17-CV-3880, 2019 WL 2708125, at *25 (S.D.N.Y. June 20, 2019); *see also Karsch*, 2019 WL 2708125, at *25 (finding "'economic prejudice' in the form of the attorneys' fees and other expenses [defendants] have incurred in discovering and proving the disappearance of the [ESI]"); *Moody*, 271 F. Supp. 3d at 430–31 (finding prejudice where "the loss of the data has required [plaintiff] to spend additional resources to attempt to resolve this critical factual dispute"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (finding prejudice in part because "defendants have been put to the burden and expense of ferreting out the malfeasance and seeking relief from the Court").  Where, as here, "the only prejudice to the movant 'lies in the extra time and expense that have been necessary to obtain relevant discovery from third parties,' monetary sanctions may be a sufficient cure."  *Charlestown Capital*, 337 F.R.D. at 60 (quoting *Lokai Holdings*, 2018 WL 1512055, at *12).

Plaintiff is entitled to reasonable attorneys' fees and costs incurred in connection with the spoliation of evidence in this case, including Plaintiff's bringing this motion.  *See, e.g.*, *Mule*, 2021 WL 2788432, at *17 (collecting cases); *Charlestown Capital*, 337 F.R.D. at 67–68; *Lokai*

*Holdings*, 2018 WL 1512055, at *17; *see also R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 52–53 (S.D.N.Y. 2010) ("Costs, including attorney's fees are appropriate when a defendant has unjustifiably destroyed evidence that it was under a duty to preserve, 'causing the plaintiff to expend time and effort in attempting to track down the relevant information.'" (quoting *Turner*, 142 F.R.D. at 78)). "'This remedy ameliorates the economic prejudice imposed' on Plaintiff[] 'and also serves as a deterrent to future spoliation.'" *Mule*, 2021 WL 2788432, at *17 (quoting *CAT3*, 164 F. Supp. 3d at 502).

The monetary sanctions are imposed against the City and the Law Department, jointly and severally. "The Court has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel." *Charlestown Capital*, 337 F.R.D. at 69 n.19 (quoting *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 16-CV-1318 (GBD) (BCM), 2019 WL 4727537, at *20 (S.D.N.Y. Sept. 28, 2019)); *see Fashion Exch.*, 2021 WL 1172265, at *5 (noting that courts in this district have sanctioned attorneys under Rule 37(e)(1) (citing *Karsch*, 2019 WL 2708125, at *26–28; and *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL 6998563, at *1 (S.D.N.Y. Dec. 20, 2019))). Where counsel commits or causes the sanctionable conduct, "[e]ffective deterrence . . . demands that the monetary sanction also run against counsel." *Joint Stock Co.*, 2019 WL 4727537, at *30 (citing *Yeboah v. United States*, No. 99 Civ. 4923 JFK THK, 2000 WL 1576886, at *4 (S.D.N.Y. Oct. 20, 2020)).

Apportioning sanctions between the City and Law Department is appropriate here because the destruction of evidence in this case resulted entirely from the Law Department's failure to take effective steps to ensure that the ESI would be preserved.[3] The Court recognizes that in

---

[3] Some courts have declined to apportion spoliation sanctions between a party and its counsel, even where the spoliation resulted from the failure of litigation counsel to take effective steps to ensure the preservation of relevant ESI, given the well-established principle that "a litigant chooses counsel at his peril." *Charlestown Capital*, 337 F.R.D. at 69 n.19 (alteration omitted) (quoting *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d

sanctioning the Law Department in addition to the City, the financial penalties ultimately will be paid out of the same purse.  Nevertheless, sanctioning the Law Department "is necessary both to deter such conduct in the future as well as to compensate for the expenses [Plaintiff] w[as] forced to incur by [the Law Department's] willful disregard in ensuring that [evidence preservation] obligations were being met." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-1254 (SHS), 2019 WL 6838672, at *9 (S.D.N.Y. Dec. 16, 2019) (imposing Rule 37(e)(1) monetary sanctions on counsel because, *inter alia*, there was "no indication that [he] made any effort to ensure that documents were preserved or that a litigation hold was imposed at any time"); *see also DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 864, 933–34 (N.D. Ill. Jan. 19, 2021) (including counsel in apportionment of monetary sanctions for, *inter alia*, not issuing "litigation hold communication stating to cease all autodelete functions").  And as noted above, courts have previously raised with the Law Department issues regarding evidence preservation in connection with civil litigation.  *See Martinez*, 2018 WL 604019, at *34; *Jacob*, 2009 WL 383752, at *1.  Sanctions here are intended to serve as a warning to the Law Department of the need to be more diligent in satisfying its obligation to ensure that evidence is preserved

No sanctions are imposed against Officer Malvagna.  Although, as explained above, Officer Malvagna had a legal obligation to preserve evidence once the Law Department was served with the Notice of Claim, *see supra* pp. 20–21, he was completely unaware of this obligation by reason of the Law Department's failure to advise him of the impending litigation.  Imposing monetary sanctions on Officer Malvagna would be inconsistent with the purposes of Rule 37 sanctions.  *See*

---

1062, 1068 (2d Cir. 1979)); *see N.Y. State Nat. Org. for Women v. Cuomo*, No. 93Civ.7146 (RLC) (JCF), 1997 WL 671610, at *5 (S.D.N.Y. Oct. 28, 1997) ("[T]he acts and omissions of counsel are generally attributed to the client." (citing *Cine Forty-Second*, 602 F.2d at 1068 n.10; and *Burke v. ITT Auto., Inc.*, 139 F.R.D. 24, 36 (W.D.N.Y. 1991))). But that reasoning is not applicable here because, pursuant to the New York City Charter, the Law Department "shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested." N.Y.C. Charter § 394(a).

*Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (noting purposes of Rule 37 sanctions: "(1) obtaining compliance with discovery orders; (2) ensuring the disobedient party does not benefit from non-compliance; and (3) providing a general deterrent in the particular case and litigation in general" (collecting cases)); *see also Flagg v. City of Detroit*, No. 05–74253, 2011 WL 4634245, at *10 (E.D. Mich. Oct. 5, 2011) (declining to sanction "rank-and-file" employees who *were* derelict in their duties because the record "reflect[ed] a more systemic failure by the City and its law department to put policies and procedures into place that ensure the City's compliance with its obligations as a party to civil litigation").

Accordingly, Plaintiff's motion for spoliation sanctions is granted only insofar as Plaintiff seeks attorneys' fees and costs and only against the City and the Law Department.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for spoliation sanctions is GRANTED IN PART AND DENIED IN PART.

IT IS HEREBY ORDERED that the City of New York and the New York City Law Department shall pay the expenses, including attorneys' fees and out-of-pocket costs, reasonably incurred by Plaintiff as a result of their failure to preserve the photographs on Officer Malvagna's cell phone, the 911 calls, and the radio transmissions, including the fees and costs reasonably incurred to discover the spoliation, to investigate what happened to the destroyed ESI, to raise and address issues regarding the spoliation of the ESI with Defendants and the Court, and to prepare to litigate the motion leading to the the portion of this Memorandum Opinion and Order addressing spoliation sanctions. The monetary sanctions shall be imposed jointly and severally upon the City and the Law Department.

IT IS FURTHER ORDERED that Plaintiff shall submit a declaration evidencing his recoverable fees and costs on or before October 13, 2021, accompanied by a memorandum of law not to exceed ten pages in length.  All sums requested must be supported by admissible evidence, including properly authenticated copies of counsel's relevant time and expense records.  The City and Law Department may file a response with any objections, solely addressed to the amount of Plaintiff's recoverable fees and costs, on or before November 3, 2021.  There shall be no reply.

The Clerk of Court is respectfully requested to terminate docket entries 84 and 91 and enter judgment for defendants.


**SO ORDERED.**

**Date:   September 21, 2021**          **MARY KAY VYSKOCIL**
**New York, NY**                        **United States District Judge**