USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/31/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VARDELL HUGHES,

                Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE OFFICER STEPHEN MALVAGNA, JOHN CAMPANELLA, LIEUTENANT CARLOS FABARA, AND OFFFICERS JOHN DOES 1-5, in their individual and official capacities,

                Defendants.

1:18-cv-09380-MKV

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION AND AWARDING ATTORNEYS FEES

MARY KAY VYSKOCIL, United States District Judge:

       The Court previously entered an Opinion and Order granting in part Plaintiff Vardell Hugh's cross-motion for spoliation sanctions against Defendants City of New York and the New York City Law Department. (Spoliation Op. [ECF No. 106]). The Court ordered that the Defendants pay the expenses reasonably incurred by Plaintiff as a result of Defendants' failure to preserve certain evidence, including photographs on the cell phone of one of the responding officers to the incident involving Plaintiff and the 911 calls at issue in this case.

       Defendant City of New York timely moved for reconsideration of the Spoliation Opinion and Order. [ECF No. 108].[1] Pursuant to the instruction in the Spoliation Opinion, (Spoliation Op. at 31), Plaintiff filed an application for attorney's fee and costs in the amount of $25,403 and for leave to supplement this application as appropriate to account for work needed to oppose Defendants' motion for reconsideration. [ECF No. 110].[2]

---

[1] In support of the reconsideration motion, Defendants filed a memorandum of law (Def. Br. [ECF No. 109], Plaintiffs filed an opposition (Pl. Opp'n [ECF No. 113], and Defendants filed a reply (Def. Reply [ECF No. 116]).

[2] Plaintiff's application for expenses is supported by the declaration of Cyrus Joubin, counsel to Plaintiff, (Joubin Decl. [ECF No. 111]) and a memorandum of law (Pl. Br. [ECF No. 112]). Defendants filed an opposition (Def. Opp'n [ECF No. 117]) and objections to line items in Mr. Joubin's timesheet (Def. Objections [ECF No. 117-1]).

1

## **DISCUSSION**

I. **Defendants' Motion For Reconsideration Of The Spoliation Opinion And Order**

Reconsideration of an opinion of the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) ("A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority."). To succeed on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk*, 935 F.3d at 54 (quoting *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration should be granted only when the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *Cooper v. Lapra*, No. 18 Civ. 9405 (KPF), 2020 WL 7027592, at

*1 (S.D.N.Y. Nov. 30, 2020) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 n.6 (S.D.N.Y. 2011)).

Defendants first contend that the award of sanctions was inappropriate because "Plaintiff could not show prejudice from the loss" of evidence, specifically, that the spoliation of evidence did not affect Plaintiff's false arrest and malicious prosecution claims. (Def. Br. 2). However, it is well-established that "misconduct that causes a party to incur additional expenses is a form of prejudice that supports an award of sanctions pursuant to Rule 37(e)." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-1254 (SHS), 2021 WL 1172265, at *5 (S.D.N.Y. Mar. 29, 2021); *see also Karsch v. Blink Health Ltd.*, No. 17-CV-3880, 2019 WL 2708125, at *25 (S.D.N.Y. June 20, 2019) (finding "'economic prejudice' in the form of the attorneys' fees and other expenses [defendants] have incurred in discovering and proving the disappearance of the [ESI]"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (finding prejudice in part because "defendants have been put to the burden and expense of ferreting out the malfeasance and seeking relief from the Court"). Accordingly, the costs Plaintiff incurred attempting to remedy the loss of evidence occasioned by Defendants' deletion of the photographs of Plaintiff taken by the responding officers and the loss of the 911 calls and radio transmissions that alerted police to the incident is a form of prejudice that warrants sanctions.

Defendants also ask that the Court reconsider its order due to policy considerations. Defendants contend that Plaintiff knew of the existence of this evidence but failed to notify Defendants of the need to preserve it. (Def. Br. 6–7). Defendants argue that Plaintiff should not be awarded with attorney's fees when he failed to take proactive measures to prevent the loss of this evidence. (Def. Br. 6–7). Defendants already made this argument in opposition to Plaintiff's cross-motion for spoliation sanctions and may not use a motion for reconsideration as

a vehicle to relitigate this issue. *See Analytical Surveys*, 684 F.3d at 52. Nonetheless, it is the obligation of the City, not Plaintiff, to place a litigation hold on any of the City's potentially relevant evidence upon receipt of the Notice of Claim. *See, e.g.*, *Herman v. City of New York*, 334 F.R.D. 377, 382 (E.D.N.Y. 2020) ("It is the obligation of Defendants to preserve evidence and send preservation notices for its documents, not the other way around."); *Man Zhang v. City of New York*, No. 17-CV-5415 (JFK) (OTW), 2019 WL 3936767, at *6 (S.D.N.Y. Aug. 20, 2019) (finding duty to preserve arose "when Plaintiffs filed their Personal Injury Claim Form, providing explicit notice of a forthcoming wrongful death and medical malpractice lawsuit"). Plaintiff served his Notice of Claim on the New York City Law Department on January 8, 2018. (Joubin Supp. Decl. Ex. A [ECF No. 92-1]). Accordingly, at that time, the City had an obligation to place a litigation hold on any of the City's potentially relevant evidence.

Last, Defendants assert that the evidence that was lost "indisputably" would have assisted the Defendants in this case, not Plaintiff. (Def. Br. 4). This contention is entirely speculative and misses the point entirely. The information was indisputably discoverable and a belief that evidence may not help the requesting party does not entitle a defendant to destroy discoverable material. Defendants' belief about the potential utility of evidence clearly does not bear on the Defendants' obligation to preserve evidence once it was in receipt of Plaintiff's Notice of Claim. *See Alter v. Rocky Point Sch. Dist.*, No. 13–1100 (JS)(AKT), 2014 WL 4966119, at *9 (E.D.N.Y. Sept. 30, 2014) (finding duty to preserve triggered "as soon as the Notice of Claim was filed . . . at which point litigation was or should have been reasonably anticipated by the Defendants").

For the foregoing reasons, Defendants' Motion for Reconsideration is denied.

## II. Plaintiff's Application For Attorney's Fees

An award of fees based on spoliation sanctions begins with a lodestar analysis. *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2021 WL 4392278, at *1 (S.D.N.Y. Sept. 23, 2021); *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, No. 06 CIV. 6198 (LAK) (JCF), 2008 WL 1899938, at *2 (S.D.N.Y. Apr. 29, 2008). The lodestar approach establishes a "presumptively reasonable fee" by calculating the number of hours reasonably expended by counsel on the litigation and multiplying that number of hours by reasonable hourly rates. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted).

### A. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay," assuming that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). There is a rebuttable presumption "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor* Hill, 522 F.3d at 191. Thus, in most cases, a reasonable hourly rate is comparable to prevailing rates for attorneys of similar skill, experience, and reputation in the local community. *See Blum v. Stenson*, 465 U.S. 886, 898–99 (1984). In assessing whether a proposed rate is reasonable in a case, courts consider, *inter alia*, each attorney's experience, reputation, and ability; the time, labor, and skill required; the novelty and complexity of the legal issues posed; and awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3.  The Court retains "considerable discretion" in determining "a reasonable hourly rate."  *Arbor Hill*, 522 F.3d at 190.

Plaintiff's counsel, Cyrus Joubin, requests an hourly rate of $400.  (Pl. Br. 4; Joubin Decl. ¶ 11).  Mr. Joubin has been a litigator for fifteen years.  (Joubin Decl. ¶ 6).  From 2011 to 2018, he worked as a solo practitioner, focusing on civil rights litigation arising out of police misconduct.  (Joubin Decl. ¶ 6).  Since 2013, he has also served on the Assigned Counsel Plan for the New York Appellate Division First Department, representing indigent defendants in New York County Criminal Court.  (Joubin Decl. ¶ 6).  In 2018, Mr. Joubin became Of Counsel to the firm of Handley Farah & Anderson, and in that role, he served as co-lead counsel in *Belle, et al. v. City of New York, et al.*, 19-cv-2673(VEC) (S.D.N.Y.), a putative class action concerning the NYPD's practice of conducting unlawful warrant checks.  (Joubin Decl. ¶ 6).

Courts in this District have found the customary rate for litigators with similar levels of experience and skill ranges from roughly $350 to $600 per hour.  *See Lilly v. City of New York*, 934 F.3d 222, 231 (2d Cir. 2019) (affirming district court award of $450 per hour rate to attorney in "garden variety" civil rights case); *Munoz v. Manhattan Club Timeshare Ass'n*, No. 11-CV-7037(JPO), 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014), *aff'd*, 607 F. App'x 85 (2d Cir. 2015) (finding $400 per hour to be a reasonable rate for litigator with 20 years of experience); *Jean-Louis v. City of New York*, 342 F. Supp. 3d 436, 442 (S.D.N.Y. 2018) (finding attorney's hourly rate of $400 per hour reasonable in Section 1983 case); *Salama v. City of New York*, 13-cv-9006(PKC), 2015 WL 4111873, at * 2 (S.D.N.Y. July 8, 2015) ("Rates found reasonable by courts in this District for experienced civil rights attorneys appear to cluster in the $350-450 per hour range.").

Defendants ask that the Court award an hourly rate of $350 based on their contention that this is not a complex case. (Def. Opp'n 9–10). However, Courts in this district have regularly found that a rate of $400 or above is reasonable even in "garden variety" civil rights cases. *See Lilly*, 934 F.3d at 231 (affirming district court award of $450 per hour rate to attorney in "garden variety" civil rights case). Considering the relative complexity of this case, the Court finds a $400 per hour rate to be reasonable.

    B. *Compensable Hours*

To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005). A court should exclude from the lodestar calculation excessive, redundant or otherwise unnecessary hours. *Quaratino v. Tiffany And Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation"). In calculating compensable hours, the Court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235–36 (2d Cir. 1985)). The Court must determine whether, "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).

The time records submitted by Mr. Joubin reflect that he worked 62.7 hours on the spoliation issues in this case. (Joubin Decl. Ex. B). Tasks included, among others, legal

7

research, drafting subpoenas, correspondence with defense counsel, preparing for and conducting depositions, and drafting the actual motion for spoliation sanctions. (Joubin Decl. Ex. B).

Defendant objects to several of the line items in Mr. Joubin's timesheet. (*See* Def. Objections). Specifically, Defendant objects to 4 hours that Mr. Joubin spent drafting a subpoena for NYPD evidence preservation policies, discussing the subpoena with NYPD counsel Robert Fodera, and following up with Mr. Fodera about the City's response. (*See* Objections at 1–5 (1.8 hours on November 3, 2019; 0.6 hours on November 20, 2019; 0.2 hours on December 10, 2019; 0.4 hours on December 12, 2019; 0.3 hours on December 13, 2019; 0.2 hours on January 8, 2020; 0.2 hours on January 17, 2020; 0.3 hours on March 13, 2020)). Defendants argue that this subpoena was drafted over a year into this litigation, [*see* ECF No. 1], and the information sought could have been obtained pursuant to Rule 34 of the Federal Rules of Civil Procedure. Defendants also protest that Plaintiff should have contacted Niki Bargueiras instead of Robert Fodera since Ms. Bargueiras was assigned counsel at the time. (*See* Def. Objections at 1–2). The Court sustains Defendants' objection to these hours and finds four hours should be excluded.

Defendant also objects to 3.2 hours that Mr. Joubin spent preparing for and conducting the deposition of Fayola Robinson, a former 911 dispatcher. (Def. Objections at 1–2 (2.1 hours on December 1, 2019; 1.1 hours on December 2, 2019)). Plaintiff used the deposition of Fayola Robinson to interpret the Sprint Report, which Defendants generated as a substitute for the 911 tape that Defendants erased. (Opinion & Order at 24). The Court overrules Defendants claim that this deposition had no influence or effect on the spoliation motion practice. The Court finds that the cost of interpreting the Sprint Report is a reasonable expense appropriately incurred as a result of Defendants' failure to preserve the 911 calls at issue in this case.

Defendants remaining objections concern the time that Plaintiff's counsel spent drafting and reviewing emails, performing legal research into spoliation issues, and drafting the cross-motion for spoliation. (Objections at 4–8). The Court has reviewed the remaining objections and concludes that Plaintiff's remaining expenses are reasonable. The Court therefore overrules Defendants' remaining objections.

C. Costs

Plaintiff also seeks $323 in costs consisting of the transcript fee for the deposition of Ms. Robinson. (Joubin Decl. Ex. B). Transcript expenses are routinely recoverable as litigation costs. *See*, *e.g.*, *Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, No. 11 CV 3652 MKB, 2014 WL 887222, at *11 (E.D.N.Y. Jan. 6, 2014) (reimbursing plaintiff for deposition transcript costs where the depositions were used on summary judgment); *Nat. Organics, Inc. v. Nutraceutical Corp.*, No. 01 CIV. 0384 GBD RLE, 2009 WL 2424188, at *5 (S.D.N.Y. Aug. 6, 2009) (awarding the costs of deposition and trial transcripts where they were used at trial or "reasonably necessary to the litigation at the time they were taken"). For the reasons stated above, the cost of the Robinson deposition transcript was a reasonable expense incurred as a result of Defendants failure to preserve the 911 calls at issue in this case.

\*   \*   \*

Accordingly, the Court awards Mr. Joubin attorneys' fees of $23,480 (58.7 hours x $400 hourly rate) and costs in the amount of $323.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Reconsideration [ECF No. 108] is DENIED. Plaintiff's Application for Attorney's Fees [ECF No. 110] is GRANTED. The Court

9

finds that Mr. Joubin is entitled to (1) attorney's fees in the amount of $23,480, and (2) costs in the amount of $323.

The Clerk of Court is respectfully requested to terminate docket entries 108 and 110 and to close this case.

**SO ORDERED.**

Date:  **August 31, 2022**
       **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**